# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ARMANDO RODRIGUEZ, #R45179, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv–00203-SMY |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| BRUCE RAUNER, | ) | |
| JOHN BALDWIN, | ) | |
| JACQULINE LASHBROOK, | ) | |
| DOCTOR SIDDIQUI, | ) | |
| ASSELMEIER, and | ) | |
| GAIL WALLS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Armando Rodriguez, an inmate of the Illinois Department of Corrections ("IDOC"), currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff claims that Menard is overcrowded and understaffed, resulting in unconstitutional conditions of confinement and inadequate healthcare. He seeks compensatory damages and injunctive relief.

Plaintiff's Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C.

1

§ 1915A(b). The factual allegations of a *pro se* Complaint are liberally construed at this phase of litigation. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

Plaintiff makes the following allegations in the Complaint: Severe overcrowding at Menard has caused a breakdown in the inmate classification system and subjects inmates, including Plaintiff, to an extremely violent environment and to unconstitutionally inadequate medical, mental health, and dental care. (Doc. 1, p. 5). Rauner, the former Governor of Illinois, Baldwin, the Director of IDOC, Lashbrook, the former Warden of Menard, and Wexford Health Sources Incorporated ("Wexford") were generally aware of the conditions at Menard because of various reports pertaining to these issues and because of numerous inmate complaints, grievances, and lawsuits pertaining to the same. (Doc. 1, pp. 5-8, 17-18). Rauner received similar complaints about overcrowding at Stateville Correctional Center ("Stateville"). (Doc. 1, pp. 5-6). He investigated the complaints and intervened on behalf of Stateville inmates by closing a cellhouse in that facility. *Id.* Rauner had the ability to do the same for inmates at Menard, but he failed to act. *Id.*

Plaintiff repeatedly submitted grievances to Rauner, Baldwin, Lashbrook, and Wexford regarding his conditions of confinement. (Doc. 1, pp. 5-9, 12, 17, Exhibits 1, 2, 4-7, 10-13, 22). He specifically complained about the negative impact overcrowding was having on his ability to obtain medical care for a serious tooth infection. (Doc. 1, pp. 11-16, 19, 24). Plaintiff's complaints were denied and/or ignored. (Doc. 1, pp. 5-23).

Around April 3, 2018, Plaintiff started having a sharp pain in his tooth and submitted a request slip for the dentist and a sick call slip. (Doc. 1, pp. 10-11). After receiving no response, Plaintiff informed several nurses who were making rounds through the prison about his tooth pain.

(Doc. 1, p. 11). The nurses told Plaintiff that he would probably have to wait a few days for an appointment because understaffing was causing delays in handling sick calls. *Id.* Plaintiff waited a few more days and then, after no response, submitted additional request slips to be seen for his teeth, which at this point were causing him a lot of pain. *Id.*

Plaintiff submitted an emergency grievance to Warden Lashbrook on April 12, 2018 stating that he was being denied medical/dental care because Wexford was deliberately understaffing the Health Care Unit to reduce costs. (Doc. 1, pp. 11-12, 17). Despite the fact that the prison rule book specifies that Plaintiff's emergency grievance and sick call slips should receive a response within three days, Plaintiff continued to receive no response, leaving him in extreme pain. (Doc. 1, p. 12). Plaintiff wrote a letter to Lashbrook to let her know that an emergency grievance had been sent and requesting help. *Id.* Not receiving a response, Plaintiff sent letters to Baldwin, Rauner, and again to Lashbrook. (Doc. 1, p. 13). These letters did not receive a reply. *Id.* At this point, Plaintiff was in extreme pain and having difficulties sleeping, eating, and brushing his teeth. *Id.* Not knowing what else to do, Plaintiff continued to write sick call and dental request slips, complaining to the gallery officer and the nurses making their rounds, and writing letters to Lashbrook, Baldwin, and Rauner. (Doc. 1, p. 14). Plaintiff also wrote several letters to the Health Care Unit Administrator Walls and the Medical Director Dr. Siddiqui, which he gave to nurses on their rounds, informing them that he was in a lot of pain and needed an appointment with a dentist. *Id.*

Plaintiff was finally allowed to see a dentist, Dr. Asselmeier, around May 20, 2018. (Doc. 1, p. 18). Dr. Asselmeier prescribed antibiotics and generic Tylenol. (Doc. 1, p. 19). Plaintiff requested to have his tooth pulled but was told he would have to come back because Dr. Asselmeier had to see too many inmates for dental care. (Doc. 1, pp. 19, 24). Plaintiff was told that due to

the inmate population and the inadequate number of medical staff, there was a wait period on certain procedures: thirty days for tooth extractions, a year for cleanings, and sixty days for filling cavities. (Doc. 1, p. 24). Plaintiff continued to have extreme pain following the appointment, so he filed more sick call and dental request slips. (Doc. 1, p. 19). When he did not receive an appointment, he wrote Lashbrook an emergency grievance. (Doc. 1, p. 20).

Over a week later, Lashbrook denied Plaintiff's request, stating that it was not an emergency. *Id.* Plaintiff filed an appeal with Baldwin stating that he was denied medical care because of IDOC's policy of allowing nonmedically trained personnel to determine the merits of a medical emergency grievance. (Doc. 1, pp. 20-21).

Plaintiff's condition continued to worsen. He filed another emergency grievance with Lashbrook but received no response. (Doc. 1, p. 23). Around June 26, 2018, Plaintiff woke up with the right side of his face swollen and disfigured and had difficulty talking. (Doc. 1, p. 23-24). He was seen by Dr. Asselmeier, who had to put him on an I-V treatment because the infection was so bad. (Doc. 1, p. 25). Dr. Asselmeier again told him that the delay in his treatment was caused by there being too many patients and not enough doctors. *Id.* Plaintiff spent a week in the Health Care Unit receiving the I-V treatment and, upon being discharged, was told by Dr. Asselmeier that he would be called back to have the tooth examined. (Doc. 1, p. 26). Eventually, Plaintiff did have his tooth extracted. (Doc. 1, p. 27).

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts:

> **Count 1:** Eighth Amendment claim against Rauner, Baldwin, Lashbrook, and Wexford for overcrowded conditions at Menard, which subjected Plaintiff to unconstitutional conditions of confinement, including a delay in receiving treatment for his infected tooth and associated pain.

4

**Count 2:** Eighth Amendment claim against Rauner, Baldwin, Lashbrook, Siddiqui, Asselmeier, Walls, and Wexford for deliberate indifference to Plaintiff's serious medical needs, an infected tooth and associated pain.

**Count 3:** Intentional infliction of emotional distress claim in violation of Illinois state law against Rauner, Baldwin, Lashbrook, Siddiqui, Asselmeier, Walls, and Wexford.

**Count 4:** Eighth Amendment claim regarding IDOC's policy of allowing non-medical personnel to determine the outcome of medical emergency grievances.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.

**Discussion**

As an initial matter, Plaintiff claims that Defendants' failure to act created a risk of harm for inmates at Menard. However, Plaintiff is only entitled to assert his own rights. *Massey v. Helman*, 196 F.3d 727, 739-40 (7th Cir. 1999). Thus, the Court will only consider alleged harms specifically to Plaintiff, not to the inmate population generally.

**Count 1**

The Eighth Amendment requires a "minimum standard for the treatment of inmates by prison officials: the prison conditions must not, among other things, involve 'the wanton and unnecessary infliction of pain.'" *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Prison overcrowding is not a *per se* constitutional violation. *See Rhodes* 452 U.S. at 348 (1981). "Accordingly, an inmate's constitutional challenge to prison conditions requires a two-part examination." *Townsend* 522 F.3d at 773. First, Plaintiff

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

5

must establish that the prison was overcrowded, and that the overcrowding led to intolerable conditions, such as the deprivation of medical care, food, sanitation, or an increase in violence (objective component). *Id.; see also French v. Owens,* 777 F.2d 1250, 1253 (7th Cir. 1985). Additionally, Plaintiff must demonstrate that the defendant acted with deliberate indifference with respect to the conditions (subjective component). *Townsend,* 522 F.3d at 773 (quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994)).

Plaintiff alleges that two separate medical care providers informed him that necessary medical care would be delayed because the Health Care Unit did not have enough staff to meet the needs of the prison population at Menard. (Doc. 1, pp. 11, 25). This satisfies the objective component of an Eighth Amendment claim.

As to the subjective component, the Complaint suggests that Defendants Rauner, Baldwin, and Lashbrook had the ability to intervene to remedy the complained of conditions but failed to act. Specifically, Plaintiff claims that Rauner, Baldwin, and Lashbrook were on notice of the conditions at Menard because of inmate complaints, lawsuits, and reports. Under similar circumstances, the Seventh Circuit has found that prison administrators were "well aware of multiple grievances from inmates regarding small cells" based on "numerous past lawsuits, including one specifically describing and ordering a remedial plan for overcrowding, small cells, and lack of adequate medical care…." *Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (citing *Lightfoot v. Walker*, 486 F. Supp. 504, 511 (C.D. Ill. 1980); *Munson v. Hulick*, 2010 WL 2698279 (S.D. Ill. July 7, 2010) (grievances filed by Plaintiff and other inmates were deemed sufficient at screening to put prison officials on notice of unconstitutional conditions where Menard prisoner challenged 40' cells that held 2 inmates for 21-22 hours per day). Moreover, Plaintiff alleges each individual Defendant was aware that he was personally subjected to

unconstitutional conditions as he wrote letters and grievances regarding the conditions of his confinement and the effects on his ability to obtain necessary medical care. The failure to properly respond to grievances and letters adequately alleges the subjective element at the pleading stages. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Therefore, Count 1 will proceed against Defendants Rauner, Baldwin, and Lashbrook. However, Count 1 will be dismissed without prejudice against Defendant Wexford, whose involvement in prison housing decisions is not established by the allegations.

**Count 2**

Prison officials may be liable for an Eighth Amendment violation if they are "deliberately indifferent to prisoners' serious medical needs." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). A condition is considered sufficiently serious if the failure to treat it could result in the unnecessary and wanton infliction of pain. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Plaintiff has stated a sufficient factual basis to proceed with his deliberate indifference claim against Defendants Lashbrook, Dr. Siddiqui, Dr. Asselmeier, and Walls. He alleges he suffered from unbearable tooth pain that, because it went untreated, resulted in an infection necessitating I-V treatment for a week and causing his face to swell. And, because prison officials may be found to be deliberately indifferent to a prisoner's serious medical needs if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," he also sufficiently alleges that Defendants responded to his serious medical condition with deliberate indifference. See, *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008).

Plaintiff claims that Defendants Rauner and Baldwin are also subject to liability because they were aware of unconstitutional conditions of confinement at Menard. Generally, letters and complaints directed at high-level officials do not establish personal involvement sufficient to maintain a claim under Section 1983. *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009) (stating "that anyone who knew or should have known of [Plaintiff's] eye condition, and everyone higher up the bureaucratic chain, must be liable. . ." is a bad assumption). But, Plaintiff's allegations pertaining to their knowledge of overcrowding at Menard, ability to address the alleged overcrowding, and knowledge of how the overcrowding was negatively impacting Plaintiff are sufficient to suggest liability on the part of Rauner and Baldwin with respect to Count 2. *See Gray v. Hardy*, 826 F.3d 1000, 1002, 1008 (7th Cir. 2016) (warden's failure to respond to prisoner's grievance complaining that he was living in a cell infested with "vermin, insects, and birds," which was causing him health problems, was sufficient to support a deliberate indifference claim against the warden); *Perez v. Fenoglio,* 792 F.3d 768, 781-82 (7th Cir. 2015) (when prison officials receive correspondence alerting them to "an excessive risk to inmate safety or health" and they do nothing, they may be held liable for deliberate indifference); *Burks,* 555 F.3d at 595 (a grievance examiner that carries out his or her duties "with deliberate indifference to the risks imposed on prisoners" may be subject to liability). Accordingly, Count 2 will also proceed against these individuals.

The allegations also support a claim against Wexford, who is presumed to act under color of state law and is thus treated as though it were a municipal entity. *See Jackson v. Ill. Medi–Car, Inc*., 300 F.3d 760, 766 n.6 (7th Cir. 2002). To state a claim against a municipality, a plaintiff must demonstrate that the wrongdoers acted pursuant to an unconstitutional policy or custom, *Whiting v. Wexford Health Sources, Inc*., 839 F.3d 658, 664 (7th Cir. 2016); *Shields v. Ill Dep't of Corr*., 746 F.3d 782, 790 (7th Cir. 2014); *Perez* 792 F.3d at 780 & n. 5 (7th Cir. 2015), and that

the policy was the moving force behind the constitutional violation (*Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Plaintiff alleges Wexford had a policy of understaffing the Health Care Unit in order to save money, which caused a delay in treatment. Count 2 will therefore also proceed against Wexford.

**Count 3**

Plaintiff's supplemental state law claim for intentional infliction of emotional distress is premised on the same allegations as his Eighth Amendment claims in Counts 1 and 2. Liberally construing the facts as presented by Plaintiff, these allegations are sufficient to support a claim for intentional infliction of emotional distress. *See* e.g., *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006). Accordingly, Count 3 survives screening.

**Count 4**

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Twombly*, 550 at 555; FED. R. CIV. P. 8(a)(2). To state a claim against a defendant, Plaintiff must describe what each named defendant did, or failed to do, that violated Plaintiff's constitutional rights. As Plaintiff has failed to associate the allegations in Count 4 with a properly named defendant, the Court will not delve into the merits of his allegations. Count 4 is dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Injunctive Relief and Official Capacity Claims**

Plaintiff attempts to bring claims against Defendants in their individual and official capacities. To the extent that Plaintiff is seeking monetary damages, he cannot pursue official capacity claims against any of the individual Defendants. *See Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (Eleventh Amendment bars official capacity claims for monetary damages). To

the extent that Plaintiff is seeking injunctive relief (Doc. 1, p. 30), Frank Lawrence, Menard's Acting Warden is the most appropriate official capacity Defendant. *See Delaney v. DeTella*, 256 F.3d 679, 687 (7th Cir. 2001). Accordingly, Counts 1, 2, and 3 will proceed against the individual Defendants in their individual capacities only; all intended official capacity claims against these individuals will be dismissed without prejudice. Additionally, Frank Lawrence, in his official capacity as the Acting Warden of Menard, will be added to the docket to carry out any injunctive relief that might be ordered.

## Appointment of Counsel

Plaintiff's Motion to Appoint Counsel (Doc. 2) is **DENIED**.[2] Plaintiff discloses eight unsuccessful efforts to contact attorneys via written correspondence. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se*, Plaintiff indicates that he is a native Spanish speaker and that, although he is learning English as a second language, someone had to assist him in writing his complaint. He expresses concern with pursuing this action *pro se* because of his epilepsy, which causes seizures, black outs, and memory loss. Plaintiff also seeks counsel because, due to the nature of the case, he will require medical experts. These alleged impediments suggest that, as this action progresses, Plaintiff may have difficulty proceeding *pro se* and will likely require the assistance of counsel. Nonetheless, the Court declines to appoint counsel at this time. Plaintiff's Complaint survives screening and will now be served on Defendants. There is no need to appoint counsel at this early stage. Once Defendants have answered the Complaint and discovery has commenced, if Plaintiff has significant difficulty, he may refile his motion.

---

[2] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

**Disposition**

IT IS HEREBY ORDERED that the Motion to Appoint Counsel (Doc. 2) is **DENIED** without prejudice.

IT IS FURTHER HEREBY ORDERED that **COUNT 1** will proceed as to **Rauner, Baldwin,** and **Lashbrook**. **Wexford** is **DISMISSED** without prejudice from **COUNT 1.**

IT IS FURTHER ORDERED that **COUNT 2** will proceed as to **Rauner, Baldwin, Lashbrook**, **Siddiqui, Asselmeier, Walls,** and **Wexford**.

IT IS FURTHER ORDERED that **COUNT 3** will proceed as to **Rauner, Baldwin, Lashbrook, Siddiqui, Asselmeier, Walls,** and **Wexford.**

IT IS FURTHER ORDERED that **COUNT 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

IT IS FURTHER ORDERED that, for the reasons stated, all claims against **Rauner, Baldwin, Lashbrook**, **Siddiqui, Asselmeier,** and **Walls** in their **official capacities** are **DISMISSED** without prejudice.

The Clerk of the Court is **DIRECTED** to add **Frank Lawrence**, the Acting Warden of Menard (official capacity only) for the purpose of implementing any injunctive relief that is ordered.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for **Rauner, Baldwin, Wexford, Lashbrook, Siddiqui, Asselmeier, Walls**, and **Lawrence** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons

(Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a Defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**IT IS ORDERED** that this entire matter be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: May 7, 2019**

s/STACI M. YANDLE
**U.S. District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**